Opinion of the Court by
Chief Justice Bibb.
In July, 1818, Henderson exhibited his bill against Pickett’s heirs to have pay for improvements, asking a decree against them personally, or for such other relief as might be proper. The bill was taken pro confesso, upon order of publication; but Pickett’s heirs afterwards appeared, and without answer, submitted to a hearing; the court dismissed the bill. So that the case stands upon the statements of the bill and exhibits alone, no proof other than bill unanswered, and exhibits, appear in the cause. The facts are these:
1. That Pickett executed his bond to Bramblett, for the conveyance of five hundred acres, out of a survey of five thousand acres, in consideration of 350 pounds; but as some disputes had arisen, respecting other claims, running into the said Pickett’s survey of 5,000 acres. Bramblett was to make his choice of 500 acres of the land, not in dispute, and on any line or lines, so as “not to cut into it in such manner as to injure the shape of the residue.” But if a sufficient quantity does not appear clear of dispute, or if after said Bramblett, shall settle the 500 acres, he should be legally evicted, in either case Pickett to refund the price of 350 pounds, by specified annual instalments by thirds.
2. This bond was assigned by Bramblett to Starke, and on the 22d January, 1805, it was re-assigned by Starke to Bramblett.
3. That after the death of Pickett, Bramblett agreed with Starke, if he would prosecute a suit against Pickett’s heirs for the legal title, and procure it, he, Bramblett, would give Starke “one hundred acres or some other certain portion thereof.”
Possession.
Decree against Pickett opened.
Starke gives his part of the land to Henderson.
Henderson settles the land.
Improvements.
Agreement between Bramblett, Starke and Pickett’s heirs, and decree.
Claim of complainant for improvements.
4. That said Starke prosecuted the suit in the Bourbon Circuit Court, in pursuance of said agreement, “to procure the legal title, and procured a decree for it.”
5. After the decree, Starke obtained possession of his part of the said 500 acres.
6. After the death of Bramblett, that decree was opened, “in the name of his heirs.”
7. During the progress of this last suit, “or previous thereto, your orator believes it was previous thereto,” Starke gave said Henderson, (the complainant,) who had married Starke’s daughter, “a certain part of the land, which he had received, as his proportion of the 500 acres.”
8. That Henderson settled on the land given him by Starke, “in faith of a promise from said Starke to convey said land to him, when the, suit of Bramblett’s heirs against Pickett’s heirs should be closed, and the legal title perfected to the aforesaid 500 acres of land.”
9. That Henderson made valuable and lasting improvements.
10. That in the progress of the suit, said Starke agreed to give up the 500 acres which had been selected, and to take the land elsewhere; and this agreement between Bramblett’s heirs and Starke, and Pickett’s heirs, bearing date in November, 1817, is exhibited, by which it was expressly stipulated that the land and improvements, should be surrendered on the first day of March ensuing, in their then repair; and Bramblett’s heirs to take the 500 acres under the contract of their ancestor, “agreeably to the answer of said Pickett’s devisees, filed in said suit.”
11. The said agreement was filed in the suit of Bramblett’s heirs vs. Pickett’s heirs, and made the decree of the court.
12. In pursuance of said decree, Pickett’s heirs “have got possession of the said 500 acres of land aforesaid, including all the improvements of your *56 orator, without making him the least compensation therefor.”
Question stated.
Sub-purchaser will be protected against the acts of vendor or vendee, prejudicial to his right, and he may have specific execution.
In such case the complainant’s claim of equity must be complete to the holder of the legal title, and all must be made parties.
The question is now, whether or not the complainant is entitled to any relief against the heirs of Pickett, upon the statements contained in his bill and the exhibits.
According to the well established powers and usages of courts of equity, a sub-purchaser in whole; or in part, of an equity, will be protected against the acts of vendor and vendee, to the prejudice of the rights of the sub-purchaser, and moreover may have a specific execution. But to effect this, he must shew his own equity against his immediate vendor, and also an equity against the principal vendor and holder of the legal title.
In such suit the intermediate vendors, through whom he derives his equity from the principal or holder of the legal title, are in the general, necessary parties. If he proves an equity against his immediate vendor, but fails to establish his equity against the principal or first vendor, yet he can have no decree. So, if the immediate vendor of the sub-purchaser resists the equity of the complainant, and supports an equitable defence or bar to a decree as between them, the complainant can have no decree against the remote vendor. The decree is, in such case, conclusive as to the rights and equities of all the parties, as to each other severally, as well as jointly.
If Henderson was seeking a conveyance of the legal title to the land from Pickett’s heirs, by virtue of an equity derived from Starke, who derived his from Bramblett, who purchased the 500 acres of Pickett, then it is clear that Starke and Bramblett’s heirs, would be necessary parties; and Henderson would be required to shew, not only his own and Starke’s equity under Bramblett, but also that Bramblett’s heirs were entitled to a decree for the land upon which Starke had settled Henderson. In such a suit, Henderson would be required to allege and show that Bramblett’s selection was conformable to the terms of his contract with Pickett. If *57 Pickett’s heirs should deny such allegation, and the fact should turn out that such selection, claimed by Bramblett, Starke and Henderson, was not according to contract, that it was not in the part clear of dispute, or not on a line or lines, but off from them, cutting into the tract and injuring the residue, then Henderson could have no decree, and like Bramblett’s heirs, would have to submit to a decree in favor of Pickett’s heirs to have the 500 acres laid off elsewhere, and agreeable to contract. Henderson, failing against Pickett’s heirs, would have to look to Starke.
If sub-purchase waive his claim, and go for compensation for improvements against the legal title holder; he must shew the same complete chain of equity and make the same parties.
But this hill does not seek a specific performance, and conveyance of the land according to Starke’s promise to Henderson, under Starke’s agreements with Bramblett, and Bramblett’s agreement with Pickens. If it were so, this bill would be defective for want of necessary parties, and for want of equity against Pickens heirs. Starke and Bramblett’s heirs are not parties; nor does the bill allege or pretend, that the selection of the 500 acres, upon which Henderson settled, had been made according to the agreement by and between Pickett and Henderson. The contrary would seem to be the fair inference to be deduced from the bill and exhibits. No allegation appears that such selection was according to contract. Bramblett’s heirs and Starke have acquiesced in the resistance made by Pickett’s heirs to that selection, and have consented to take the land elsewhere, “agreeably to the answer of said Pickett’s devisees, filed in said suit.” If Henderson sought a decree, for the land he had improved, he would be hound to shew some fact to satisfy the court that this decree, to which he says he was not “party or privy,” was improper, that it prejudiced his rights—In other words, the onus would lie upon Henderson, to shew that the first selection was according to the terms of the contract. He would also be required to shew a ease which would entitle him to a decree against Starke.
Can he then, by waiving the principal subject, and asking for an incident, dispense with those ne *58 cessary parties and allegations, which would be essential to establish his equity to the principal?
One who purchases land in litigation on the contingencies of the vendor's success becomes a privy to the decision that may be rendered, and his claim will be concluded by it.
The complainant does not attempt to overhale the agreement and decree between Bramblett’s heirs and Pickett’s heirs, made under the superintendence of Starke; he does not object to the justice of the defence made by Pickett’s heirs, by which they successfully resisted the claim of Bramblett’s heirs to the land first selected; he does not complain of any fraud or collusion, or improper yielding to the defence of Pickett’s heirs; he omits to make Starke a party; he omits to ask the land itself; he omits to allege that he, the complainant had received no compensation from Starke for the improvements; but omitting all these, he submits to the agreement and decree. Why this omission and submission? Is it because he has received compensation from Starke, in money, or by a like quantity of land out of the tract decreed according to the answer of Pickett’s heirs? Is it because of the fact, that the selection of the 500 acres was made in violation of the agreement? Why did he fail to apply during the pendency of the suit between Bramblett’s heirs and Pickett’s heirs, and ask the court to protect his interests against the allegations of Pickett’s heirs, that the complainants, Bramblett’s heirs, were not entitled to the land claimed, but were bound to take it elsewhere? The claim of Henderson, according to the bill, hung upon that suit. It was a promise by Starke, “to convey said land to him when the suit of Bramblett’s heirs against Pickett’s heirs, should be closed, and the legal title perfected to the aforesaid 500 acres of land.” At the very time he entered into possession, he had notice of the lis pendens, and depended upon the event of the controversy, and the success of Bramblett’s heirs in that suit. As his claim commenced, pending that suit, and was but a contingent interest in the controverted subject, by its very terms to await the closing of that controversy, Henderson is a privy to that suit, although he was not a party, and is bound by the decree.
An allegation of the bill contradicted by the exhibit refered to, avails nothing.
Ground of complainant’s claim for improvements.
Although the bill alleges that the agreement in that suit did not extend to the improvements, yet that allegation of the bill itself, is contradicted by the agreement refered to and exhibited If Pickett’s heirs compensated Bramblett’s heirs and Starke, or either; if neither Bramblett’s heirs nor Starke, could now have, inequity, a decree against Pickett’s heirs for the improvements, Henderson can be in no better situation.
If Henderson is entitled to a decree for the value of the improvements, against Pickett’s heirs, it will be in violation of the terms of the agreement and decree alleged in the bill, as made in that suit. It must be permitting Henderson, although a privy in estate, acquiring a mere equity pending the suit, and with notice of its pendency, to escape the effect and consequences of the decree in that cause, and now to overhale and controvert the justice and merits of that decree. The rules of equity, founded on the soundest principles and wisest policy, forbid the opening of that controversy in favor of Henderson, upon the statements of bis bill. “Interest reipublicce ut finis sit litium,” (it is important to the community that there be some end to litigation,) is a maxim in equity.
The complainant is not asking the benefits of the statute concerning occupying claimants, by bringing a case within its provisions, and submitting himself to the conditions and terms thereof he is not asking a specific performance of any agreement; But he comes into a court of equity, asking to be paid for improvements, in this bill be does not ask relief against the person in faith of whose promise be settled and improved, but against those with whom he made no agreement. His counsel asks the decree upon the broad foundation, that every seater and improver, who, being a possessor bona file, bestows his labor and improvements on the land, shall be compensated by the right owner.
Is Henderson such an improver, such a bonæ fidei possessor, as that by the precedents and usages of courts of equity, he shall charge the value of his improvements *60 as a personal account against the heirs of Pickett, or as a lien on the land?
Bona fide possession defined by Hardwick.
Complainant’s claim overruled.
Who shall, or shall not be considered a bonæ fide possessor, has been explained by general rules, and by examples.
In Dormer vs. Fortescue, 3. Atk. 134, Chancellor Hardwick, (whose character commands the undivided respect of the profession, whose decisions are stamped with the united authority of learning and common sense,) has given the rule thus ‘But where a man shall be said to be a bona fide possessor, is, where the person possessing, is ignorant of all the facts and circumstances relating to his adversary’s title.” As to Henderson, this could not be.—He states expressly, in his bill, that his settlement and improvements were made, “in faith of a promise from Starke, to convey the said land to him, when the suit of Bramblett’s heirs against Pickett’s heirs should be closed, and the legal title perfected.” This is his statement as to the settlement on the land. As to the gift, he had stated, that he was uncertain whether it was made before, or alter the first decree was opened. As to the settlements and improvements, they were made after knowledge in fact, of Pickett’s title; how Bramblett and Starke claimed under Pickett, and of the pending litigation between Bramblett’s heirs and Pickett’s heirs.
At knowledging the powers of a court of equity to protect the interests of a sub purchaser, and to give to a bonæ fidel possessor, compensation for his improvements, yet, the complainant was not entitled, as against Pickett’s heirs, to any decree; because the interest which he sets up in equity, originated after the litigation began between Bramblett’s heirs and Pickett’s heirs, being but a mere equity asserted under Pickett’s title, (not under an adversary patent,) it is concluded by the decree in that cause, and his settlement and improvements being made under such an interest, and after full knowledge of *61 the pending litigation, he has no claim to be considered at a possessor bona fide.
Haggin and Triplett for plaintiff; Mayes for defendant.
Decree affirmed with costs.